UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PONTE VEDRA GIFTS &
ACCESSORIES COMPANY, LLC,

    Plaintiff,

v.                                          Case No. 3:15-cv-887-J-32JRK

APL LOGISTICS LTD,

    Defendant.

## O R D E R

    Plaintiff Ponte Vedra Gifts & Accessories Company, LLC ("PVG") entered into a service agreement with Defendant APL Logistics LTD ("APL") under which APL contracted to transport merchandise from China to the United States. Ultimately, PVG's merchandise remained in a shipyard in Long Beach, California too long. PVG filed suit in this Court seeking damages resulting from APL's alleged deviation, fraudulent inducement, and conversion. APL moved to dismiss this action based in part on a forum selection clause in the bill of lading that requires disputes over shipments to be adjudicated in the courts of Singapore or the Southern District of New York. PVG maintains the case was properly filed in this Court pursuant to a forum selection clause in the parties' overall agreement. For the reasons set forth herein, the Court concludes that the forum selection clause in the bill of lading governs this action, and this case should be transferred to the Southern District of New York.[1]

---

[1] The Court delayed ruling on the motion while the Magistrate Judge conducted

## I. FACTUAL BACKGROUND

PVG and APL entered into a Non-Vessel-Operating Common Carrier Service Arrangement ("NSA") under which APL would arrange for the shipment of PVG's merchandise from China to Ponte Vedra Beach, Florida. APL contracted with another company, Nippon Yusen Kabushiki Kaisha ("NYK"), to provide the ocean voyage portion, and several drayage carriers for the overland transportation. The merchandise was shipped under bills of lading issued by APL from China to Long Beach, California without incident. Upon arrival in Long Beach, PVG alleges that APL's contracted drayage carriers demanded more money to move the merchandise from Long Beach to its final destinations. According to the Complaint, APL neither acquiesced to the demands nor arranged for other carriers to transport PVG's cargo and, as the result, the merchandise remained at Long Beach terminal past the "free time" provided for in the contract between NYK and APL. The Complaint states that the length of the delay in Long Beach led to the ultimate consignee's rejection of the merchandise, and PVG suffered damages including lost profits and loss of goodwill and reputation.

## II. ANALYSIS

APL moves to dismiss this matter under Rule 12(b)(3), Federal Rules of Civil Procedure, for improper venue based on a forum selection clause in the bill of lading.[2]

---

a settlement conference, but to no avail.

[2] Prior to 2013, binding precedent held that motions asserting improper venue based on forum selection clauses were properly brought as motions to dismiss pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998). In 2013, the

Because this is an admiralty and maritime matter, federal law applies. Carnival Cruise Lines v. Schute, 499 U.S. 585, 590 (1991). Under federal law, forum selection clauses are presumptively valid and enforceable, M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), and "are to be interpreted by reference to 'ordinary contract principles.'" Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012) (quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1261 (11th Cir. 1999)). "An action is only subject to dismissal based on a forum selection clause if the import of the language of the clause as a whole is to provide a particular court or courts with 'exclusive jurisdiction,' although the clause need not include the word 'exclusive.'" Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1270 (S.D. Fla. 2004).

APL contends that the forum selection clause in the bill of lading governs this action and requires PVG to litigate its claims in Singapore or the Southern District of New York. APL's position stems from the language in section 6 of the NSA and clause 28 of the bill of lading. Section 6, "CARGO DAMAGE OR LOSS," provides:

---

Supreme Court issued its opinion in Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, which distinguished between cases in which venue truly is "wrong" or "improper" within the meaning of federal venue statutes, in which case a Rule 12(b)(3) dismissal or 28 U.S.C. § 1406(a) transfer motion is appropriate, and those cases in which the parties merely agreed to litigate disputes in a particular forum. 134 S. Ct. 568 (2013). When venue is proper under § 1391, the appropriate method of enforcing a forum selection clause is either a motion to dismiss for forum non conveniens where the agreed upon forum is a foreign or state court, or a motion to transfer pursuant to 28 U.S.C. § 1404(a) where the agreed upon forum is another federal district. Atlantic Marine, 134 S. Ct. at 577, 579, 580. APL does not argue that the Middle District of Florida is improper under the federal venue statute; instead, its argument is based solely on the forum selection clause in the bill of lading, but PVG has not argued that APL's motion was improperly filed as a Rule 12(b)(3) motion.

3

> (a) Shipments under this NSA shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery and/or other breach of the contract of carriage, if any, shall be determined <u>exclusively</u> under the terms and conditions of the bill of lading. . . .
>
> . . .
>
> (c) Disputes involving alleged cargo loss, damage, loss or delay, misdelivery and/or other breach of the contract of carriage, if any, shall be resolved in accordance with Clause 28 of the Carrier bill of lading.

(Doc. 15-1 at 5 (emphasis added).) Clause 28 of the bill of lading, entitled "LAW AND JURISDICTION," provides:

> i) Governing Law Insofar as anything has not been dealt with by the terms and conditions of this Bill of Lading, Singapore law shall apply. Singapore law shall in any event apply in interpreting the terms and conditions hereof.
>
> ii) Jurisdiction All disputes relating to this Bill of Lading shall be determined by the Courts of Singapore to the exclusion of the jurisdiction of the courts of any other country provided always that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of the Courts of any other country which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but shall not constitute a waiver of the terms of this provision in any other instance.
>
> iii) Notwithstanding Clause 28 i) and ii), if Carriage includes Carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States of America.

(Doc. 15-2 at 6.)

4

Conversely, PVG asserts that a forum selection clause in the NSA permitting referral of disputes under the NSA to any court of competent jurisdiction governs, and therefore this action was properly filed in this Court. PVG relies on section 9(a) of the NSA, entitled "NSA DISPUTES," which provides:

> Any and all disputes arising out of or in connection with this NSA, including any failure by the Merchant to pay, or by the Carrier to perform, as required hereunder, may be referred by either party to litigation before any Court of competent jurisdiction. . . .

(Doc. 15-1 at 5-6.) PVG claims that this action involves a dispute which arises "out of or in connection with" the NSA; specifically, APL's failure to perform. (Doc. 16 at 3.) PVG further contends that there is a conflict between NSA section 9(a) and clause 28 in the bill of lading which must be resolved in favor of the NSA due to the language of NSA section 1(a). That section states, in relevant part, "[i]n the event of any conflict among the terms and conditions of this NSA, the bill(s) of lading and the Carrier's applicable tariff(s), the order of governance shall be, first, this NSA, second, the bill(s) of lading, and third, the tariff(s)." (Doc. 15-1 at 3.) APL argues there is no conflict because NSA section 6 deals with cargo damage or loss, including delay, while section 9 deals with the provisions of the NSA itself. (Doc. 19 at 1, 2.) The Court agrees.

The NSA governs the overall relationship of the parties, while the bill of lading contains the specific contractual terms for carriage and delivery of the shipments. North Am. Auto Sales, LLC v. Nippon Yusen Kaisha, No. 8:14-cv-3220-T-30EAJ, 2015 WL 5521919, at *1 n.1 (M.D. Fla. Sept. 16, 2015) ("A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'") (quoting Kawasaki

Kisen Kaisha Ltd. v. Regal-Beloit Corp., 561 U.S. 89, 94 (2010)). This interpretation is consistent with decisions finding that agreements like the NSA govern disputes related to the pricing and volume of shipments, whereas bills of lading govern disputes over cargo damage, loss, or delay. See, e.g., Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., 462 F. Supp. 2d 1098, 1104-05 (C.D. Cal. 2006) (forum selection clause in service agreement, which provided that plaintiff would ship a minimum number of containers that defendant would carry at certain rates, did not apply to claims for cargo damage or modify the terms in the bill of lading where the service agreement expressly stated that bill of lading applied to shipments notwithstanding any provisions in the service agreement), rev'd and remanded, 557 F.3d 985 (9th Cir. 2009), rev'd and remanded, 561 U.S. 89 (2010), aff'd, 620 F.3d 1167 (9th Cir. 2010). PVG's response acknowledges a similar structure. (See Doc. 16 at 2-3 ("[T]he Plaintiff and the Defendant entered into a specific agreement called [the NSA] in which the Plaintiff made a minimum volume commitment to the Defendant and the Defendant agreed to provide containers and transportation for that minimum volume of cargo. Because of this minimum volume commitment there are two types of contracts between the Plaintiff and the Defendant, each of which has a different forum selection clause. The overall contract which established the relationship between the parties is the [NSA]. . . .").)

In addition, under ordinary contract principles, more specific provisions, like the clause in the bill of lading, are usually given more weight than general provisions, and interpretations that give meaning and effect to all parts of an agreement are

6

preferred over those which render portions ineffective or meaningless. Restatement (Second) of Contracts § 203(a), (c) (1981). Reading the NSA forum selection clause to apply to disputes over shipments despite the specific language in the bill of lading providing for its application to such disputes would render the forum selection clause in the bill of lading surplusage. Moreover, although PVG asserts that the bill of lading was not separately negotiated or specific to these parties, and therefore the NSA best represents their agreement and relationship, the terms and conditions of the bill of lading are specifically incorporated by reference into the NSA which was signed by PVG.

The language of section 6 also suggests that the forum selection clause in the bill of lading should apply over the general, permissive clause in section 9. Sections 6(a) and (c) of the NSA state "[s]hipments under this NSA <u>shall</u> be subject to all the terms and conditions of Carrier's bill of lading in effect at the time of shipment" and "<u>shall</u> be resolved in accordance with Clause 28 of the Carrier bill of lading," which requires that disputes be resolved by the courts of Singapore or the Southern District of New York where, as here, carriage involves a United States port. (Doc. 15-1 at 5; Doc. 15-2 at 6.) "[T]he use of the term 'shall' is one of requirement," <u>Slater v. Energy Servs. Grp. Int'l, Inc.</u>, 634 F.3d 1326, 1330 (11th Cir. 2011), and when agreements state that parties "shall" submit disputes to a particular forum, "they are obligated [to] do so to the exclusion of all other forums." <u>Sybac Solar AG v. Sybac Solar, LLC</u>, No. 8:12-cv-1218-T-17TGW, 2012 WL 6814193, at *5 (M.D. Fla. Oct. 22, 2012) (parties' agreement that they "will" submit disputes to chosen forum made that forum

mandatory), report and recommendation adopted, 2013 WL 104912 (M.D. Fla. Jan. 9, 2013). As a mandatory clause, the forum selection clause in the bill of lading is entitled to greater weight. See, e.g., Miramar Inv., LLC v. Preferred Income Partners IV, LLC, No. 2:12-cv-106-FtM-99SPC, 2012 WL 2872879, at *3 (M.D. Fla. Apr. 11, 2012) ("Mandatory clauses contrast with and are given more weight than permissive clauses . . . ."), report and recommendation adopted, 2012 WL 2872598 (M.D. Fla. July 12, 2012). Moreover, section 6 states that shipments and APL's liability "shall be determined exclusively under the terms and conditions of the bill of lading." (Doc. 15-1 at 5 (emphasis added).)

The mandatory language of NSA section 6 also specifically governs disputes involving alleged "breach of the contract of carriage" and APL's liability for such breach. (Doc. 15-1 at 5.) PVG's Complaint expressly alleges claims based on APL's alleged breach of the contract of carriage and, as such, is subject to the mandatory forum selection clause in the bill of lading. (See Doc. 1 at 4 ¶ 12 ("APLL deviated from the contracts of carriage by stopping the cargo in its transit and abandoning it in the NYK yard."); id. at 6 ¶ 17 ("APLL deviated from the contract of carriage with PVGA by abandoning the cargo in the NYK storage yard(s) and then requiring PVGA to locate truckers and pay them freight and premiums to recover the cargo from NYK. As a result of APLL's deviation from the contract of carriage and the abandonment of the cargo, PVGA has sustained damages.").) Accordingly, pursuant to the

unambiguous language of NSA section 6 and clause 28 in the bill of lading, the Court finds that the forum selection clause in the bill of lading applies to this action.[3]

PVG asserts that even if this dispute arises under both the NSA and bill of lading, the Middle District of Florida is the appropriate forum because most witnesses reside within this District, and "litigating this case in New York is gravely difficult and inconvenient for all parties concerned because none of the relevant witnesses are in New York." (Doc. 16 at 4.) While the presumption of validity and enforceability can be defeated upon showing that the forum selection clause is unreasonable under the circumstances, M/S Bremen, 407 U.S. at 10, "[t]he burden of proving unreasonableness is a heavy one . . . ." Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997).

To invalidate a forum selection clause, the party resisting its enforcement must show that: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Krenkel v. Kerzner Int'l Hotels, Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009). "The financial difficulty that a party might have in litigating in

---

[3] PVG's contention that a deviation from the terms of the contract of carriage prevents APL from availing itself of its provisions, including the forum selection clause, is unavailing. Mere allegations of deviation do not render a forum selection clause unenforceable, and whether a deviation actually occurred must be resolved by courts in the chosen forum. See NYMET Indus. Solutions, Inc. v. Maersk, Inc., 818 F. Supp. 2d 511, 515 (E.D.N.Y. 2011) (noting that the plaintiff's position that an unreasonable deviation negates a forum selection clause is "illogical" because "it would essentially nullify forum selection clauses in any bill of lading case that involves allegations of unreasonable deviation" (emphasis in original)).

9

the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003).[4] Indeed, only in an "'exceptional' situation" would judicial refusal to enforce a forum selection clause be proper. In re Ricoh Corp., 870 F.2d 570, 574 (11th Cir. 1989).

Here, PVG has not shown, although it has vaguely alleged, that the agreement was induced by fraud, or that dismissing this case pursuant to the valid and enforceable forum selection clause in the bill of lading contravenes public policy. Nor does the Court find that this case presents an "exceptional situation" that justifies retention of this action in the Middle District of Florida rather than the parties' selected forum. Accordingly, this case belongs in either Singapore or the Southern District of New York as set forth in the parties' agreement. In light of this determination, the Court now turns to PVG's request that, in lieu of dismissal, this case be transferred pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York to preserve PVG's claims that may otherwise be time-barred. (Doc. 16 at 5, 10-11.)

Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." Atlantic Marine, 134 S. Ct. at 579. Indeed, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only

---

[4] Even so, financial hardship caused by a transfer is a relevant consideration. Here, PVG has not attempted to show such hardship.

under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Id. at 581 (footnote omitted). Finding no such "extraordinary circumstances" here, this action will be transferred to the Southern District of New York.[5]

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 15) is **DENIED without prejudice** to Defendant reasserting its Rule 12(b)(6) and 9(b) grounds once the action is transferred.

2. Pursuant to 28 U.S.C. § 1404(a), this action is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York.

3. The Clerk should terminate all pending motions and deadlines, and after transfer has been effectuated should close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 16th day of May, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

---

[5] As set forth in note 2, supra, neither party addresses whether venue is proper under § 1391, and therefore whether this case should be transferred pursuant to § 1404(a) or § 1406(a). Because PVG requests transfer pursuant to § 1404(a), the Court has considered the appropriate factors and concluded that a transfer is warranted. Even if the Court were to consider PVG's request as properly made pursuant to § 1406(a), the Court would still conclude that transfer, rather than dismissal, is warranted in the interest of justice.

ab
Copies:

Counsel of record